J. F. NEWBER v. THE CITY OF WILMINGTON, NORTH CAROLINA

No. 865DC261

(Filed 18 November 1986)

**Municipal Corporations § 9.1— police officers—no stand-by or on-call pay—policy not approved by city council**

Plaintiff policeman was not entitled to stand-by or on-call duty pay where there was no showing that defendant's city council ever specifically approved the stand-by pay policy or that the police department ever sought or obtained approval from the city manager or city council, and the city manager could not unilaterally adopt a policy establishing the funding for stand-by and on-call duty for any city department; furthermore, plaintiff was not entitled to counsel fees pursuant to N.C.G.S. § 95-25.22(d), since the statute explicitly exempts the State and any municipality from its application. N.C.G.S. § 160A-162; N.C.G.S. § 160A-148.

APPEAL by defendant from *Tucker, Judge*. Judgment entered 20 January 1986 in District Court, NEW HANOVER County. Heard in the Court of Appeals 20 August 1986.

This is an action filed by plaintiff, a member of the Wilmington Police Department since 3 October 1966, to compel defendant City of Wilmington to pay him for stand-by duty worked between 26 September 1977 and 1 February 1983 while a member of the Technical Services Section of the Wilmington Police Department. Plaintiff's claim is based on Administrative Policy P/P 6-77 which was issued by the office of defendant's City Manager, with an effective date of 26 September 1977. This policy provided that in emergencies and when other necessary work conditions occur, employees of the City during other than normal work hours may be called in for duty or placed on stand-by duty. Compensation for such duties was to be received at the rate of "one hours pay for each normal work day and two hours additional pay for each day of the week-end or holidays. In addition, . . . to compensation for actual time worked in accordance with the city's overtime pay policy." The policy further provided that "stand-by and on-call duty systems shall either be approved through the City's budget process or specifically approved by the City Manager when necessitated by emergencies or other conditions." At no time prior to or following 26 September 1977 did the Wilmington City Council ever expressly approve or disapprove the policy.

Following institution of this policy, the Director of Public Works of the City of Wilmington made budget requests which were approved and authorized by the city council for the payment of stand-by wages to Public Works employees. No such requests were ever made by or on behalf of the Chief of Police nor were any wages paid to police officers pursuant to said policy.

Plaintiff was assigned stand-by duty after transfer to the Technical Services Section on 4 November 1976 and on several occasions was actually called in to work while on such stand-by. Plaintiff was compensated at the standard hourly pay set for overtime hours worked. Plaintiff did not receive any reimbursement for transportation expense incurred in reporting for duty when called, nor did he receive any other compensation for stand-by duty other than the aforementioned pay for hours actually worked.

Plaintiff was unaware of Administrative Policy P/P 6-77 until 30 September 1982 at which time he filed a grievance with the Police Department claiming that such policy applied to him. After failing to obtain additional compensation through the grievance process plaintiff filed this lawsuit on 7 June 1983. After a hearing without a jury the court awarded plaintiff compensation in stand-by pay for time worked under the terms of Administrative Policy P/P 6-77 and in addition plaintiff was allowed to recover of the defendant attorney's fees for said action. From this judgment defendant City of Wilmington appealed.

*Yow, Yow, Culbreth & Fox, by Stephen E. Culbreth, for plaintiff appellee.*

*Office of City Attorney for Wilmington, North Carolina, by Thomas C. Pollard, for defendant appellant.*

WEBB, Judge.

The defendant assigns error to the trial court's conclusion that Administrative Policy P/P 6-77 did not establish a "schedule of pay" as defined in G.S. 160A-162. We agree. G.S. 160A-162 provides in pertinent part: "(a) The city council shall fix or approve the schedule of pay, expense allowances, and other compensation of all city employees."

Administrative Policy P/P 6-77 appears clear and unambiguous on its face and thus will be given its plain meaning as to application. The policy indicates in its initial sentence its purposes, "to establish conditions for authorizing stand-by and on-call duty, to define them and to *set rates for compensation.*" (Emphasis added.) The policy further states:

Employees assigned to such stand-by duty shall receive an additional one hours pay for each normal work day and two hours additional pay for each day of the week-end and holidays. In addition, employees will be compensated for actual time worked in accordance with the City's overtime pay policy.

The policy is clear. It sets forth rates of pay for stand-by and on-call duty and thus must fall within the purview of G.S. 160A-162 and its mandate as to "schedule of pay." G.S. § 160A-162 (1982 Replacement).

The effect of application of G.S. 160A-162 to this case is to make ineffective any policy as to payment of city employees without the approval of the Wilmington City Council. This conclusion is supported clearly in G.S. 160A-162 which states: "In cities with the council-manager form of government, the manager shall be responsible for preparing position classification and pay plans for submission to council, and after such plans have been *adopted by council*, shall administer them." (Emphasis added.)

From a review of the record we can find no express approval by the Wilmington City Council as to authorization of a stand-by pay policy for the Wilmington Police Department, nor can we find from our review of statutory and case law any support for unilateral adoption of such pay policies by the city manager. G.S. 160A-148 states that "the city manager's personnel actions are to be in accordance with such general personnel rules, regulations, and policy as the city council may adopt." We hold that G.S. 160A-148(1) prohibits the city manager from unilateral adoption of a policy establishing the funding for stand-by and on-call duty for any city department. The manager's role is limited to recommending position classification and pay plans to the city council for their ultimate approval. G.S. 160A-164 (1982 Replacement).

Further support for our view in defining the authority of the city manager is stated in the Wilmington City Charter provisions in effect at the time Administrative Policy P/P 6-77 was issued. This Charter mandates that the city council "*approve* a general plan for employees to be *administered* by the city manager." (Emphasis added.) 1977 N.C. Sess. Laws c. 495, s. 9.1. We hold that the policies of the municipality are the decisions of the council alone, and the duties of the city manager are to act as a conduit through which policy is implemented.

Administrative Policy P/P 6-77 is very clear as to its requirements: application of stand-by and on-call pay policy to departments within the Wilmington City government requires specific action on the part of the respective departmental heads. A request must be made, and the specific approval of the City Manager or the City Council must be obtained. The Wilmington Police Department never sought nor obtained either the council or manager's approval such that stand-by and on-call pay would become applicable to their employees. Policy P/P 6-77 permits

only those employees who follow this aforementioned procedure to be eligible for stand-by and on-call pay, all other employees including plaintiff in this instance simply do not come within the terms of the policy.

We believe the statutory mandates of G.S. 160A-162 and the requisite action and authorization required by both the Wilmington City Charter and the Administrative Policy P/P 6-77 itself are such that plaintiff has no entitlement to stand-by or on-call pay based on said policy. 1977 N.C. Sess. Laws c. 495 s. 9.

Defendant also assigns as error the trial court's conclusion that plaintiff is entitled to recover attorney's fees pursuant to G.S. 95-25.22(d). We agree. The plaintiff asserted and the trial court agreed that via G.S. 95-25.22(d) attorney's fees were appropriate in this instance. However, G.S. 95-25.14 explicitly exempts "the State of North Carolina, any city, town, or municipality" from application of Article 2A of Chapter 95 of which G.S. 95-25.22 is a part. Thus, G.S. 95-25.22(d) has no application to this appellant at trial and the trial court was in error in awarding such fees. We reverse.

We reverse and remand with an order that the plaintiff's claim be dismissed.

Reversed and remanded.

Chief Judge HEDRICK and Judge WELLS concur.